24-1431 Dekovic v. Rubio Mark Barb, Lictor Immigration for the Appellants. If Ms. Dekovic had not become a U.S. citizen, her son, Alejandro, would have been able to immigrate to the United States as the minor son of an LPR. Even though he would have been well over the age of 21 at the time he became an LPR himself, his age was frozen in the F2A category by virtue of the age-out protections of the Child Status Protection Act, or CSPA. However, because Ms. Dekovic became a citizen before her son's visa interview, the government contends that those age-out protections were stripped from Alejandro, and he now must wait many, many more years until he can join the rest of his family in the United States. Such an interpretation violates the text, structure, and purpose of the CSPA and should not be upheld. Which delay is the statute trying to get at? The processing time for USCIS to adjudicate a family petition to prove the existence of that family relationship. Okay, what if, I mean, there could be harsh results for someone who's a U.S. citizen if their child, if they became naturalized at a, you know, when their child was close to age 21 and there was a delay. Well, no. If a person is a U.S. citizen and they file an I-130, a petition for their child when they are still under 21, CSPA will freeze the date, the age of that child. Based on their biological age? Yes, that's right. Okay, fair enough. Using traditional tools of statutory construction, it is clear that Congress did not intend to penalize this unique subset of F2A children. Can you discuss why we shouldn't be persuaded by sort of the way that the district court reasoned through the textual argument here that there isn't a cross-reference and immigration law, immigration statutes are complex and have many invocations of what a child is, and so we really do rely on sort of an integrative statutory presentation in the text, and here we don't have that. Absolutely, it is notoriously complex, and I also wish Congress could have been a little more clear, but I think they were clear enough. The district court judge relied on the plain text of 1151 F2. As three other circuits have cautioned, however, analyzing the use of the word age in that subsection must be done in connection with the entire statute to see how the different provisions interact with each other. I agree that if we only look in isolation at F2, it just says age. Congress doesn't explicitly say there should be a different method here, but when we do do that deeper dive and look into three other sections, I'm referring to 1101B1, which is the default definition of child, which is biological in general. When the CSBA refers to child, they mean 21. However, 1153 H1 then provides a carve-out, and it's this particular class of people that we're talking about, people whose parents were green card holders and the beneficiaries, the children, were under 21 at the times their petitions were filed. For this discrete class of individuals, there's a different method. That method basically doesn't penalize these individuals for the amount of time it took USCIS to adjudicate their petitions. But that method's not textual. That method is built on case law, legislative history. I would respectfully disagree. I'm looking at other texts that talk about how to define this class. I'm looking at F2. What's notable about that section is it only applies to F2A beneficiaries, people who started the process in the F2A category. Which is a lawful permanent resident, right? These would be the minor unmarried children of a lawful permanent resident. That's right, Your Honor. And that's what we have here, right? That is. That is absolutely correct. We have a lawful permanent resident, so this would have applied. And so the question becomes, what is the effect of it once there's a conversion to they become a naturalized citizen? Right. Should the beneficiary be penalized for the fact that their parent became a citizen? Or should they continue to have the same age out protections that they previously demonstrated by showing that when you subtracted the amount of time that was spent on the I-130 processing from their biological age at the time a visa first became available, they were under 21. So this particular person, Alejandro, had already obtained that benefit. He met the requirements. And so then to lose that simply because his parent went into what is generally supposed to be a more favorable position. The CSBA gives lots of preferences to family members of citizens. Now you're talking about the purpose of the act and legislative history. We first have to determine that the use of the word age in the statute is ambiguous before we can go there, don't we? So again, I would argue that it's unambiguous. Again, I think it's clear. I wish it were clearer. But when I look at those other three statutes, 1101B1, 1153H1, and 1151F1, and I read them in concert, they all inform how I decipher the use of the word age in F2. F2 can only apply to F2A beneficiaries. And the other section of the statute says this is the special rule. This is the carve out that we have for F2A beneficiaries. And so it's incorporated into that meaning of the word age. This is different than an F1. F1, similarly, can only apply to a discrete group of people. These are individuals who were under 21 when their citizen parent filed for them. In other words, they were immediate relatives from the get-go. So in that sense, age clearly means biological. Succinctly, would it be fair to say that your argument is that if you read the statute in context, that the age rule is based on what category the parent was in at the time they filed, and it doesn't change? So because the parent here was an F2A applicant, they are in 1153H1, and they stay in that category because that's what they were when they filed. No, it's not. No, they don't stay in the category. But the rules for deciding when they might convert to another category still rely upon that modified age calculation. Here we're talking about a conversion, which we think should have been. Yeah, I think we're saying the same thing, which is that if you qualified because you filed F2A as a lawful permanent resident for calculation based on 1153H1, that is how age is calculated. And my point is that calculation rule doesn't change just because you're naturalized during the waiting period. That's right. Yes, I would agree with that. And your argument is that the text is unambiguous, correct? Yes. And that the reliance on the statutory scheme is a perfectly appropriate place to look, notwithstanding the absence of a cross-reference. Is that your argument? That's correct. Yes. And why? I mean, I think I'm a little bit stuck on that. It was the question that I asked you earlier, and it seemed to be most persuasive to the district court's reading of the text, that to endorse the argument that you're making, we would expect to see a cross-reference in the text, and we don't. Once again, I wish it would have been more clear, but we do see, we see the connections, we see the connective tissue between these different statutes. F2, for example, references F1. F1, in turn, references the default definition of child under 21, the biological age. But then 1153H1, we know, modifies 1101B1. So by connecting the dots, I think it does implicitly cross-reference other statutes. It says, because this category of people in F2A is limited only to F2A, by connecting those dots, I must use the age calculation that Congress carved out for F2As. And once a person has achieved that protection, they met the requirements, they did the math, they're still under 21, they sought to acquire within a year, they don't lose that. So what, this is really complicated, and you're doing a really good job. What concerns me is that you want to pick and choose on what rights sort of go to your client. You want the age for someone who applied under F2A to apply. But you want then for the applicant to convert over into the process for a naturalized citizen where there wouldn't be a wait time, right? Correct. And that seems contradictory, doesn't it? I mean, if you want to freeze them in F2A status for age, shouldn't you freeze them in F2A status for everything? That would be great. If my client stayed stuck in F2A, he'd be here now. But he didn't stay stuck in F2A. No, I understand that. But that has implications beyond this case. Because in other cases where somebody might be coming through the process, they might be stuck with a waiting period where they wouldn't if they moved into a naturalized citizen. F1, is that right? You're going to have to help me. Where are you headed on this? I'm not sure. Well, I'm just saying in some instances, the argument that you're making could work against somebody. Well, if they freeze an F2A status, am I understanding correctly that they would have a choice on how it's calculated? So nobody is arguing here that their category remains at F2A. The options here are either that F2A converts to immediate relative. That's our position. As long as they satisfy the criteria under 1153 H1. Or they're converted in the government's interpretation to F1, which is another non-immediate relative category. And the reason why they do that, and that's all based on the age calculation.  Right. And which age calculation applies. You want the age calculate. You want the naturalized citizen benefit for they becoming a citizen right now, or they get their visa right now. But you want the age calculation from the F2A person, right? Yes, the age calculation sticks to them. It doesn't go away. They met the criteria. Congress meant for them to have it under the government's interpretation. It's taken away from them. Right. No, I get that. And so I guess my whole point, which I haven't made very clearly, is what you're asking for is, we end up cobbling together two different kinds of status here. We use the age from someone who has applied for a visa under the permanent legal resident category. But ultimately, they get their visa because their parent was naturalized as a citizen, because it converted. It happens all the time that there are conversions of all different types. That's not an issue. There's no problems with conversion. Oh, I agree. But you only want to convert part of it. No, I want to convert the whole thing. I want to keep the age out protections they were given for having satisfied the criteria and not penalize them when their parent naturalizes, which creates this weird group of people. All other F2As will be able to take advantage of that. F2As whose parents never naturalized. F2As whose parents did naturalize, but even under the biological, using the biological age, they're still children. They get those age out protections. But this little donut hole of people are penalized. And that's what I'm saying is unfair and is frankly not grounded sufficiently in the statute. The CSPAs, turning away from the text to your sort of more purpose-driven arguments. I mean, if the CSPA's purpose is to avoid bureaucratic processing time, you don't want to avoid the delay caused by bureaucratic processing time. Do we view naturalization in the same way? I mean, naturalization doesn't seem to be the sort of harm that the CSPA is targeted at ameliorating. No, I'm seeing that I'm out of time. Can I? Oh, please finish. No, the processing time of a naturalization application has no bearing on any of the- It's not the process. That's not my question. The processing time of the naturalization application, but the CSPA's purpose is the delay associated with bureaucratic processing time should not be held against the applicant. And here, naturalization is unlike bureaucratic delay caused by processing time, right? It's different, but the consequence of the governance interpretation is that this person moved from a situation where you're right, they were protected from not being penalized for bureaucratic delays, and then move into a category where they lose that protection. They now suddenly are harmed by those bureaucratic delays. And that's, I don't, I think it's clear from the purpose of the CSPA that Congress was trying to avoid that. Okay, thank you, counsel. Please proceed. Good morning, your honors. May it please the court. Christopher Giger on behalf of the U.S. Secretary of State and Director of the National Visa Center. Your honor, I have two points. First, as a threshold matter, this court still should hold that the plaintiffs here have not challenged a final agency action because the initial visa classification is not the culmination of the agency's decision-making process. Let's talk about that for a second in relation to the other circuits that have passed on this question. So in Cuthill, that was similarly procedurally postured to the case here. Do you agree? Yes. Okay, so there was no final agency action issue there. In Telus, it seems to me that the government's argument in support of non-reviewability assumed that should the case be postured like it is here, where the reclassification decision was made by the National Visa Center, you would have a final agency action. Do you disagree with that? I think there was an assumption in that case that it was final agency action, but ultimately it wasn't litigated in that case. Well, it's not so much what interests me and that I'd like to get your response to. It's not, I'm not talking about some sort of litigation estoppel for the government or anything like that, but the way in which your final agency argument proceeded in Telus assumed that the reason you were arguing consular non-reviewability was because if it was the reclassification decision that we have here, it just, there's no question it would just be final. There was nothing to litigate. It was just the antecedent sort of premise of your argument there. Yeah, and in that case, Your Honor, I think that because the government took the position that it was a consular non-reviewability prevented litigation or prevented review, excuse me, it's still, that position doesn't necessarily, I think preclude the fact that there could still not be final agency action. I do recognize the point, but I think, but because that wasn't actually litigated, because that point wasn't raised, it doesn't preclude this court from, it doesn't preclude us from the government from deciding later or arguing later that this is not a final agency action. Right, and again, I'm not at all suggesting that you're precluded in some way from making this argument. It just seems strange to me that the government's argument in Tellus really attempted to advocate that the procedural, the appropriate procedural posture for seeking review is precisely the one that we have here. I certainly take that point, Your Honor. However, I do think that, I mean, Tellus also explained that this was, that was not, I think it ultimately supports that it wasn't a final agency action because the court determined that there wasn't a consular officer that made a final decision that made a decision that would then prevent review. And I think part of that, so to kind of segue into the point here that this is not a, this is not the culmination of the agency's decision-making process. This is ultimately only an initial classification that is still subject to change. What is the recourse if we agree with you that there's nothing final here? Then the court does not, should not address the statutory interpretation and the court would send it, the court would reverse the district court's holding. Right, to be more clear, not what our mandate is, what is the recourse for the petitioner? He would not be able to bring suit until a consular officer, and until a visa, until his visa application is ruled on. That is our position, that that is the culmination of the agency. That would be 20 years? Could be as much as 20 years here? It would depend on if he remains- His country of origin and the, but I mean, we're talking decades. Potentially, and I would ultimately depend on the priority date and whether or not Mr. Jimenez would remain in the F1 preference category, or if he would get married and change to the F3 preference category, which that point ultimately is part and parcel to the fact that this is not the final decision because it is still subject to change. And even on the second prong of final agency action, Your Honor, this, the rights and obligations that flow from the preference category, or excuse me, these are not rights and obligations that flow. Rather, as the Supreme Court has described, this is merely marking Mr. Jimenez's place in line. And it's, and his rights to a visa and to apply for a visa are no different now than they would be years from now when a visa becomes available. Rather, the preference category only represents how many visas are available in a given year in that category, but it doesn't change his eligibility or the fact that he can later, that he can still apply for one. But even if this is final agency action, Your Honor, here 1150, the age reduction formula in 1153 H1 is expressly limited to the age determination for sons and daughters of lawful permanent residents and is not imparted into the calculations for sons and daughters of U.S. citizens or naturalized U.S. citizens in 1151 F2. I'm going to pose a question to you that's the same as, I'm sorry, Judge McHugh, please. No, go ahead. I was going to pose a question to you that's similar to one that the government got from the bench in the Second Circuit, which is, can you name a single provision where Congress intended that the act of naturalization downgrades the visa status of a newly naturalized citizen's family? Well, Your Honor, I can't name a specific provision that does that. However, here, this case is ultimately about congressional choices and the plain language that Congress chose to invoke when enacting the CSPA. Congress explicitly chose to limit the age reduction formula in 1153 H1 to only 1153 A2 A and D. Which is not applicable here. That's specifically for sons and daughters of LPRs. Moreover, if this court were to accept the plaintiff's argument, the court would have to rewrite the age reduction in 1153 H2 in order to, excuse me, in H1, in order to graft it into the calculation that the parties agree is controlling here. That's 1151. Let me ask you this. We have every circuit that has looked at this so far has ruled against you on this issue. And we have a very thoughtful decision from the district court here that rules in favor of you. And when you look, parse out the analysis from all of those decisions, I think you can make a pretty good argument that the use of the word age in 1151 F2 is ambiguous. And once it's ambiguous, don't we look at the things that Judge Rossman was just referring to, which is congressional intent and policy and an overarching intent in the statutes not to penalize people when they become citizens. If the, if the language is ambiguous here, but your honor, the court should be hard pressed to hold that the plain language of the statutory provisions here is contrary to congressional intent. There are in, and as I was saying, that this is what is a, I mean, what, what is one thing that would counsel in favor of the idea that Congress wanted this result or intended this result? Well, Judge Carson, you actually suggested you, you said that the petitioner's argument be a, could work against somebody. In that case, it would, it would work against individual. Let me rephrase the plaintiff's argument would work against beneficiaries, beneficiaries who are seeking to bring derivative beneficiaries because under the immediate relative preference category, but derivative beneficiaries cannot be included, but under the F1 preference category, they can. And so when looking at the text of this, of, and the language of the statutory provisions, even though I certainly take the point that Mr. Jimenez will have to wait longer, but Congress could have seen that this would be not allowing derivative beneficiaries would be a negative and harm certain beneficiaries of naturalized US citizens. And on top of that, I think Congress understood that they understood the significant benefit that is provided to being a US citizen or being the son or daughter of a US citizen and wanted to ensure that those benefits flow to children of US citizens. And take Mr. Jimenez's case as an example, when his mother naturalized and became a US citizen, he was 24 years old. He was never a child under the INA of a US citizen. I think Congress also understood that. And on top of that, Judge Rossman, you mentioned that as the district court also mentioned that there is no cross-references. And I think it's safe to say reading the CSPA, Congress was well aware that it knew how to cross-reference. But we also know how to read statutes without a cross-reference. The point is not necessarily that we need a cross-reference to know that we look at statutory text and related provisions holistically. Isn't that fair? That is fair, Your Honor. But I think the lack of a cross-reference, the fact that 1153 H1 limits itself to 1153 A2 A and D, and that even as the Second Circuit noted, this court would have to rewrite the triggering age-preserving date in 1153 H1 in order to graft it into 1151 F2. That specifically being that in 1153 H1, it is the date a visa becomes available. Whereas if this court were to require that language into 1151 F2, it would essentially have to rewrite the reduction to say that it's the age of the date of naturalization reduced by the number of days the petition was pending. And it would have to remove the language that requires the alien to apply for lawful permanent residency within one year. So the court would have to change this congressional, this statutory language. And I'll also note in terms of structure, Congress chose two distinct structures for determining age, one for sons and daughters of U.S. citizens in 1151 F and another for sons and daughters of lawful permanent residents in 1153 H. These are distinct provisions. And when the court looks at 1151 F1 and F2, there is no indication that the age reduction formula for sons and daughters of lawful permanent residents is imparted onto that. And I'll even note, Your Honor, my friend on the other side noted that this court would have to imply that there's crop reference and connect the dots and that there is some sort of connective tissue that the court would have to assume. There is no language that the plaintiffs can point to that actually connects the two together. So if we're writing this decision in favor of the government in the face of several circuit courts that have grappled with this difficult question and reached a different conclusion than the one you advocate, what is it that you would urge us to say about those decisions and why they are incorrect? Similar to what the district court said, Your Honor, that the plain language is what controls and that the statute is not ambiguous. And even looking at the context, it still favors the government's interpretation. Well, context does not need an antecedent ambiguity conclusion, right? We're looking at the full context. We don't have to find anything ambiguous to look at the context, right? Yes, Your Honor. And so here I would urge this court to first hold that the plain language is controlling, that Congress understood. Because the one that the CSPA also note, all of these provisions that we're talking about were enacted together. They weren't enacted in piecemeal fashion. So Congress did have the opportunity to have all of, have all this language in front of it, tinker through the language and look at the different situations that will arise and still chose to not impart that age reduction. And so I would urge this court to disagree with the first, second, and ninth in the sense that the plain language here does control 1151 F-2 makes no mention of the age reduction formula. 1153 H-1 sufficiently, or explicitly limits itself to only sons and daughters of lawful permanent residents. And Congress chose to make, this case is ultimately about congressional choices and Congress chose to make these distinctions. So unless the court has any further questions. Judge McHugh? No. Thank you, counsel. Thank you. The case will be submitted and counsel are excused.